FILED
John E. Triplett, Acting Clerk
United States District Court

By mgarcia at 3:50 pm, Nov 24, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ANTHONY LEROY WHITE, SR., | |
| Plaintiff, | CIVIL ACTION NO.: 2:18-cv-71 |
| v. | |
| JIM PROCTOR, et al., | |
| Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Castillo's Motion to Dismiss and for Summary Judgment.[1] Doc. 33. For the following reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Castillo for failure to exhaust administrative remedies and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal in favor of Defendant Castillo.

## BACKGROUND

On July 23, 2018, Plaintiff, proceeding pro se, filed a Complaint, alleging Defendant Castillo (and others) violated his constitutional rights.[2] Docs. 1, 6. In his Complaint, he brings claims against several Defendants. Regarding Defendant Castillo, Plaintiff alleges Castillo failed

---

[1] Defendant Castillo's Motion is docketed as a Motion for Summary Judgment. See Doc. 33. The filing, however, is titled as both a Motion to Dismiss and a Motion for Summary Judgment. Doc. 33-1 at 1. Because the Court finds grounds to dismiss for Plaintiff's failure to exhaust administrative remedies, the Court does not address Defendant Castillo's argument for summary judgment.

[2] The instant action was consolidated with another, Civil Action 2:18-cv-72, both of which "involve a common question of law or fact." Doc. 19 at 1 n.1. The Court considered Document Number 1 to be the operative Complaint and Document Number 6 to be a supplement in its Report and Recommendation, and both Complaints were considered together in evaluating the merits of Plaintiff's case. Id.

to provide adequate medical care and was deliberately indifferent to Plaintiff's serious medical needs after he was assaulted while at the Camden County Safety Complex. Doc. 1 at 6.

Defendant Castillo filed the instant Motion on March 25, 2020. Doc. 33. In his Motion, Defendant Castillo argues the Court should dismiss the claims against him for Plaintiff's failure to exhaust administrative remedies, or alternatively, grant summary judgment in Defendant's favor. Doc. 33-1 at 1. Initially, the Court directed Plaintiff to respond to Defendant Castillo's Motion by April 15, 2020. Doc. 34. Plaintiff then filed a motion for extension of time to respond to Defendant Castillo's Motion for Summary Judgment, which the Court granted. Docs. 37, 38. Plaintiff, however, did not respond to Defendant Castillo's Motion. The Court then issued an Order for Plaintiff to file a response to Defendant Castillo's Motion. Doc. 44. Plaintiff filed his Response on October 13, 2020, doc. 45, to which Defendant Castillo filed a Reply. Doc. 49.

In his Motion to Dismiss, Defendant Castillo argues it is clear on the face of Plaintiff's Complaint he failed to exhaust his administrative remedies regarding the medical treatment Defendant Castillo provided. Doc. 33-1 at 6. Defendant Castillo concludes this failure requires the Court to dismiss Plaintiff's Complaint. Id. In his Response, Plaintiff includes details about Defendant Castillo, disputes Defendant Castillo's credibility, and provides additional factual allegations about the care he received. Doc. 45 at 2–5. Plaintiff, however, does not address what, if any, steps he took to pursue administrative remedies as to his claims against Defendant Castillo.

## DISCUSSION

The Court must now determine how to address Defendant's Motion to Dismiss for Plaintiff's failure to exhaust his administrative remedies. For the reasons set forth below, I

**RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims against Defendant Castillo and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## I.     PLRA's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269, at *4 (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari, 729 F. App'x at 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative

remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust. . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Secondly, exhaustion is not required when an administrative procedure that is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting

6

Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082.  First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1.  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541

n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

Defendant Castillo argues that because Plaintiff did not aver he filed a grievance relating to his medical care, Plaintiff did not exhaust his administrative remedies. Doc. 33-1 at 6. The Court looks first, as it must, to Plaintiff's account regarding exhaustion. Turner, 541 F.3d at 1082.

Looking solely at Plaintiff's account regarding exhaustion, it is not enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test. A plaintiff is not required to plead exhaustion; instead, it is a defendant's burden to prove the plaintiff failed to exhaust available remedies. Jones v. Bock, 549 U.S. 199, 216 (2007); Turner, 541 F.3d at 1082. Here, Defendant Castillo argues Plaintiff did not exhaust his administrative remedies and points to allegations in Plaintiff's Complaint. In his pleadings, Plaintiff contends he filed a grievance against other Defendants for other claims and acknowledges his familiarity with the jail's grievance policy, but there is no indication Plaintiff ever filed a grievance concerning Defendant Castillo or his claims concerning Castillo. Plaintiff did not respond to Defendant's arguments regarding exhaustion. Thus, the Court is left with Plaintiff's version of the facts concerning exhaustion as to Castillo—which is nil. Even assuming Plaintiff's version to be true, there is no indication Plaintiff ever attempted to exhaust

his claims against Castillo.[3]  Accordingly, under Turner's first step, the Court must conclude Plaintiff failed to exhaust his administrative remedies as to his claims against Castillo.  The Court would reach the same result under the second step in Turner.  For this reason, the Court should **GRANT** Defendant Castillo's Motion to Dismiss.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Castillo for failure to exhaust administrative remedies and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal in Defendant Castillo's favor.  Doc. 33.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

---

[3]  While the Court's focus under Turner is on Plaintiff's Response to Defendant's Motion to Dismiss, the Court has also reviewed Plaintiff's initial and supplemental Complaints.  These pleadings contain no indication Plaintiff exhausted his administrative remedies as to his claims against Defendant Castillo.  Furthermore, Plaintiff was informed by notice from the Clerk of Court he could not merely rest on the allegations in his pleadings in responding to Defendant Castillo's Motion.  Doc. 34.

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of November, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA