**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

ANTHONY LEROY WHITE,

              Plaintiff,

     v.

JIM PROCTER, et al.,

              Defendants.

CIVIL ACTION NO.: 2:18-cv-71

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants Mastrolanni, Procter, and Watson's Motion for Summary Judgment, filed on October 21, 2020. Doc. 46. The Clerk of Court mailed a Notice to Plaintiff advising him Defendants filed a Motion for Summary Judgment and a response must be filed by November 11, 2020. Doc. 48. That Notice further advised Plaintiff that:

    1.     If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

    2.     If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

    3.     If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

Id. This Notice was not returned to the Clerk of Court as undeliverable to Plaintiff at Dodge State Prison. The time for Plaintiff to file a response has elapsed, and Plaintiff has not filed any response. Defendants' Motion is now ripe for adjudication.

However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

### I.    Plaintiff's Allegations and Procedural History

Plaintiff filed this action on June 12, 2018, alleging Defendants violated his constitutional rights by failing to protect him while he was a pre-trial detainee at Camden County Safety Complex. Doc. 1. Plaintiff states, in November 2019, he was kidnapped at gunpoint, beaten, and injected with drugs by Montrell Williams, Marcus Johnson, and a third unknown, African American man. Id. at 7. Hours later, Plaintiff was arrested and brought to Camden County Safety Complex, where he was held as a pre-trial detainee. Id. During a bond hearing, Plaintiff asked the presiding judge about securing warrants on Montrell Williams and Marcus Johnson. Id. Former Defendant King investigated Plaintiff's arrest and testified during Plaintiff's preliminary hearing. Id. at 6. Thereafter, Plaintiff was brought to the Camden County Safety Complex. Id. At various times, Plaintiff and his parents requested to speak with Defendants

Sheriff Procter and Major Mastrolanni, both of whom had control over inmate placement in the jail dorms and were aware of Plaintiff's and his parents' pleas regarding the two men.  Id.

The following April, Montrell Williams and his brother, Quadrae Hobbs, were placed in the same dormitory as Plaintiff.  Id.  The morning after that placement, Montrell Williams and Quadrae Hobbs came into Plaintiff's cell and kicked and beat him.  Id. at 8.  During the attack, Plaintiff's right eye was injured when his glasses broke into his eye, his left pinky finger was dislocated, and another finger was broken.  Docs. 1, 6.  In the medical ward, former Defendant Castillo wrapped Plaintiff's hand and prescribed him 800mg of ibuprofen.  Doc. 1 at 6, 8. Plaintiff's finger was not otherwise treated; he continues to experience numbness, and his broken finger healed improperly and must be re-broken.  Id. at 6.  As relief, Plaintiff requests $3.2 million in compensatory damages and to be moved to another dorm.  Doc. 6 at 5.

After frivolity review of Plaintiff's Complaint, the Court dismissed Defendant King. Doc. 19.  Additionally, former Defendant Castillo filed a motion to dismiss, which the Court granted.  Docs. 33, 52, 56.  Plaintiff's only surviving claims are for failure to protect against Defendants Mastrolanni, Procter, and Watson.  The parties completed discovery and on October 21, 2020, Defendants Mastrolanni, Procter, and Watson filed a joint Motion for Summary Judgment.  Docs. 46.  In their Motion, Defendants argue they are entitled to qualified immunity in their individual capacities and Eleventh Amendment immunity in their official capacities.  Id. Plaintiff has not filed a response in opposition, and the time to do so has expired.  The Motion is ripe for review.

## II.     Undisputed Material Facts

It is important to note at the outset the allegations in Plaintiff's Complaint are not to be considered in resolving Defendants' Motion for Summary Judgment.  See Chambliss v. Buckner,

804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 46-1.  Defendants' SMF is supported by Plaintiff's December 10, 2017 grievance, doc. 46-2; Plaintiff's May 4, 2018 Statement, doc. 46-3; Plaintiff's Release from Protective Custody Waiver, doc. 46-4; Plaintiff's May 7, 2018 grievance, doc. 46-5; and Plaintiff's deposition, doc. 46-6.  Plaintiff has not responded to Defendants' SMF.  The undisputed facts for summary judgment, therefore, include the following:

Plaintiff claims his Fourteenth Amendment rights were violated when he was assaulted in the Camden County Safety Complex by two other inmates—Montrell Williams and Quadrae Hobbs—on April 29, 2018.  Doc. 46-1 at 2.  Plaintiff claims Montrell Williams was one of three men who previously forced Plaintiff to commit an armed robbery in November 2017.  Id.  These men lured Plaintiff into their car and once he was inside, pulled guns on him, pistol whipped him, and told him they were going to kill his son if he did not commit a robbery for them.  Id.  They then injected Plaintiff with drugs and forced Plaintiff to commit an armed robbery at a Family Dollar.  Id.  Once inside the Family Dollar, Plaintiff "passed out."  Id.  Plaintiff was ultimately arrested and charged with armed robbery and false imprisonment of the Family Dollar cash register, to which he pled guilty.  Id. at 2–3.  Following Plaintiff's arrest, he spoke with the judge at his bond hearing about taking a warrant out on the men who forced him to commit the crimes.  Id. at 3.  Additionally, he spoke with Sergeant Phillips, who is not a Defendant in this case, about how to take out criminal warrants on these men.  Id.

Plaintiff was a pre-trial detainee at the Camden County Safety Complex.  Id.  Initially, Plaintiff was kept in involuntary protective custody.  Id.  On December 10, 2017, Plaintiff submitted a grievance to Defendant Proctor, asking to speak with Defendant Proctor or Defendant Mastrolanni about taking a warrant out on the men who forced Plaintiff to commit the armed robbery, stating it was vital to his case.  Id. at 4.  The grievance was returned to Plaintiff, stating: "Refer to defense attorney and investigations."[1]  Id.  Plaintiff also spoke with former Defendant King about the identity of his attackers.  Id.  Other than the grievance, Plaintiff never alerted Defendants Procter or Mastrolanni to any potential threats to him prior to being attacked and never spoke with Defendant Watson before the attack.  Id. at 5.  On December 13, 2017, Plaintiff was discharged from involuntary custody after jail deputies asked if he was ready to go to general pollution, and he replied, "Yeah, I'm not afraid of nobody."  Id. at 6.  Additionally, Plaintiff executed a waiver, requesting to be placed in general population.  Id.

After his release from protective custody, Plaintiff stated nothing relevant to his claim happened until April 29, 2018, when he was attacked.  Id. at 8.  On April 29, 2018, Williams and Hobbs came into Plaintiff's cell and began kicking, hitting, and choking him.  Id.  Following the attack, Plaintiff submitted a grievance on May 14, 2018, complaining of his attackers.  Id.  The grievance relayed the details of his prior interactions with Williams and Hobbs and the recent attack, and Plaintiff asked prison officials to prosecute Williams and Hobbs for the prison assault.  Id. at 9–10.  The grievance was investigated, but prison officials determined there was not enough evidence to press charges against Williams and Hobbs.  Id. at 10.

---

[1]	Plaintiff apparently believes he was directed to speak to the "district attorney" and not his "defense attorney."  The distinction is immaterial to the resolution of the instant Motion.

**LEGAL STANDARD**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.

Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir.

2011).

## DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's Fourteenth

Amendment failure to protect claims.  Doc. 46.  Defendants contend there is no issue of material

fact showing Plaintiff suffered a constitutional violation.  Id. at 1.  Further, Defendants are

entitled to qualified immunity in their individual capacity, and they are entitled to Eleventh

Amendment immunity in their official capacity.  Id.  Plaintiff did not respond to Defendants'

Motion for Summary Judgment.

## I.      Qualified Immunity

Defendants argues the Court should grant their Motion for Summary Judgment because

Plaintiff's claim against them in their individual capacity is barred by qualified immunity.

Doc. 46 at 7–15.  "Qualified immunity offers complete protection for government officials sued

in their individual capacities if their conduct 'does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  Al-Amin v. Smith, 511

F.3d 1317, 1324 (11th Cir. 2008) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir.

2002)); Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002); see also Jones v. Fransen, 857

F.3d 843, 851 (11th Cir. 2017); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[Q]ualified

immunity shields from liability 'all but the plainly incompetent or one who is knowingly

violating the federal law.'"  Fransen, 857 F.3d at 851 (quoting Lee, 284 F.3d at 1194).

To successfully assert a defense of qualified immunity, Defendants "must first prove that

[they were] acting within [their] discretionary authority during the events in question."  Cottone

v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003), *abrogated in part on other grounds by* Randall

v. Scott, 610 F.3d 701 (11th Cir. 2010).  If Defendants do so, the burden shifts to Plaintiff to

show Defendants are not entitled to qualified immunity.[2]  Id. at 1358.  Plaintiff must show:

(1) "relevant facts . . . set forth a violation of a constitutional right," and (2) Defendants "violated

a constitutional right that was clearly established at the time of [their] conduct."  Taylor v.

Hughes, 920 F.3d 729, 732 (11th Cir. 2019).

Because Defendants assert a qualified immunity defense in their Motion for Summary

Judgment, Plaintiff must demonstrate the evidence of record "make[s] out a violation of a

constitutional right."  Pearson v. Callahan, 555 U.S. 223, 232 (2009); Taylor, 920 F.3d at 732;

Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013); Cottone, 326 F.3d at 1358.  "If, under

the plaintiff's allegations, the defendants would have violated a constitutional right, 'the next[]

. . . step is to ask whether the right was clearly established.'"  Cottone, 326 F.3d at 1358 (quoting

Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Even when there is a genuine factual dispute

regarding whether a constitutional violation occurred, if the defendant did not act in violation of

clearly established law, then the claim will not proceed past summary judgment.  Ansley v.

Heinrich, 925 F.2d 1339, 1348 (11th Cir. 1991) (quoting Harlow, 457 U.S. at 818 ("[I]f the law

is not clearly established, the official is entitled to summary judgment regardless of factual

disputes.")).

A.     **Discretionary Authority**

Discretionary authority includes all actions of a governmental official that "(1) were

undertaken pursuant to the performance of his duties, and (2) were within the scope of his

authority."  Dang ex rel. Dang v. Sheriff, Seminole County, 871 F.3d 1272, 1279 (11th Cir.

---

[2]     Courts may exercise their discretion to choose the order to analyze the "constitutional violation"
and "clearly established right" prongs on the qualified immunity analysis.  Williams v. Russo, 636 F.
App'x 527, 532 (11th Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

2017) (quoting <u>Rich v. Dollar</u>, 841 F.2d 1558, 1564 (11th Cir. 1988)); <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). Defendants worked as jail officials at Camden County Safety Complex, a county jail, and assert they were performing their duties and acting within their discretionary authority when determining where to place Plaintiff in that facility. <u>See</u> Doc. 46 at 8. Plaintiff does not dispute this contention. Consequently, no genuine dispute of material fact exists regarding whether Defendants were exercising their discretionary authority when deciding where to jail Plaintiff. <u>See</u> <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998) (discussing evaluation of discretionary authority for qualified immunity purposes); <u>Youngs v. Johnson</u>, No. 4:06-CV-19, 2008 WL 4816731, at *12, (M.D. Ga. Oct. 30, 2008) (holding jail guards were acting within discretionary authority when placing inmate in a particular cell when evaluating official immunity).

### B.   Constitutional Violation

Because Defendants acted within the scope of their discretionary authority, the burden shifts to Plaintiff to show qualified immunity does not apply. <u>Dang</u>, 871 F.3d at 1279 (quoting <u>Lee</u>, 284 F.3d at 1194); <u>Cottone</u>, 326 F.3d at 1357. Plaintiff must "prove that the facts alleged, construed in the light most favorable to [him], establish that a constitutional violation did occur." <u>Shaw v. City of Selma</u>, 884 F.3d 1093, 1099 (11th Cir. 2018) (citing <u>Smith v. LePage</u>, 834 F.3d 1285, 1291 (11th Cir. 2016)); <u>Gilmore v. Hodges</u>, 738 F.3d 266, 272 (11th Cir. 2013); <u>see also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).

Here, Plaintiff alleges Defendants violated his Fourteenth Amendment rights. As a pre-trial detainee at the Camden County Safety Complex, Plaintiff's failure to protect claim is evaluated under the Fourteenth Amendment. However, the Eleventh Circuit Court of Appeals has "historically treated convicted prisoners' Eighth Amendment claims and pretrial detainees'

Fourteenth Amendment claims identically." White v. Cochran, No. 16-17490, 2017 WL 6492004, at *2 (11th Cir. Nov. 27, 2017). Thus, a failure to protect claim under the Fourteenth Amendment mirrors analysis under the Eighth Amendment's proscription against cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Defendants argue the evidence of record does not support a reasonable inference they infringed on Plaintiff's constitutional rights. Thus, the question before the Court is whether a genuine dispute of material fact exists on each essential element of Plaintiff's Fourteenth Amendment claim. Even if this inquiry resolves in Plaintiff's favor, qualified immunity will shield Defendants from liability unless they also acted in violation of clearly established law. With this in mind, the Court first examines whether Defendants meet their burden of showing the evidence of record is insufficient, as a matter of law, to create a Fourteenth Amendment violation.

### 1.    *Failure-to-Protect Claim Legal Requirements.*

Plaintiff alleges Defendants violated his constitutional rights by failing to protect him from an attack by other inmates even though they knew he faced a substantial risk of serious harm. The Eighth Amendment forbids the infliction of cruel and unusual punishment. U.S. Const. amend. VIII; Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010). The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014). "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825 (1994)). However, prison officials are not automatically liable for "every injury suffered by one prisoner at the hands of another . . . ."

Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016) (citing Farmer, 511 U.S. at 834); Purcell, 400 F.3d at 1319.

"To survive summary judgment on a deliberate indifference failure-to-protect claim, 'a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Caldwell, 748 F.3d at 1099 (quoting Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013)); see also Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)).

### (a)    Substantial risk of serious harm

To bring an Eighth Amendment claim, a plaintiff must show that, viewed objectively, he actually faced a substantial risk of serious harm. Caldwell, 748 F.3d at 1099. This requires showing the risk presented was substantial, not just speculative, theoretical, or insignificant. Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010); Estate of Owens v. GEO Grp. Inc., 660 F. App'x 763, 767 (11th Cir. 2016) ("[T]he risk must be actual, rather than potential or speculative." (citing Carter, 352 F.3d at 1349–50)). Secondly, this objective element calls for a showing that the risk created the possibility of not just harm or injury but a serious harm or injury. See Hunt v. Warden, 748 F. App'x 894, 900 (11th Cir. 2018) ("[M]ere discomfort, without more, does not offend the Eighth Amendment.").

"[A] prisoner's exposure to the potential for a fight does not, in and of itself, constitute substantial risk of harm." Estate of Owens, 660 F. App'x at 767 (citing Purcell, 400 F.3d at 1323). A substantial risk of serious harm exists when the "risk of inmate-on-inmate violence at a jail" is "excessive." Purcell, 400 F.3d at 1320. The threat of violence must be "extreme" enough

to create "an unreasonable risk of serious damage to the prisoner's health or safety." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010); see also Estate of Owens, 660 F. App'x at 767.

### (b)   *Deliberate indifference to risk*

If a substantial risk of serious harm exists, the inquiry turns to the second element, which is sometimes referred to as the "deliberate indifference" element of the overall Eighth Amendment claim. Rodriguez, 508 F.3d at 617; Caldwell, 748 F.3d at 1099. "The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective." Caldwell, 748 F.3d at 1099; see Bowen, 826 F.3d at 1320–21. A prison official acts with deliberate indifference "when he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez, 508 F.3d at 617.

"[T]he subjective component" of the second element deals with "the [defendants'] actual knowledge that an inmate faced a substantial risk of serious harm . . . ." Caldwell, 748 F.3d at 1099; see Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010). "[T]he defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Caldwell, 748 F.3d at 1099–1100 (quoting Farmer, 511 U.S. at 837); Bowen, 826 F.3d at 1320–21; Smith, 368 F. App'x at 14. "[T]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Doe v. Ga. Dep't of Corr., 245 F. App'x 899, 903 (11th Cir. 2007) (quoting Brown, 894 F.2d at 1537).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Bowen, 826 F.3d at 1321 (citing Farmer, 511 U.S. at 842). The "degree of

specificity" of the facts subjectively known to the defendant is a relevant consideration in determining whether the defendant knew the risk was serious and the harm substantial.  Id. at 1322; Caldwell, 748 F.3d at 1102.  However, "[t]he trier of fact may . . . 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  Bowen, 826 F.3d at 1321 (quoting Farmer, 511 U.S. at 842).

The objective component of the second element requires an evidentiary showing that the defendant disregarded the risk by "failing to respond to it in an (objectively) reasonable manner.'"  Caldwell, 748 F.3d at 1099 (quoting Rodriguez, 508 F.3d at 616).  "An official responds to a known risk in an objectively unreasonable manner if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways to reduce the harm but recklessly declined to act.'"  Rodriguez, 508 F.3d at 619–20 (quoting Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995)).  Importantly, however, to be deliberately indifferent, a prison official's unreasonable response to the risk of serious harm must demonstrate more than mere negligence.  Smith, 368 F. App'x at 14 (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)) ("[S]imple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."); see also Moulds v. Bullard, 345 F. App'x 387, 391 (11th Cir. 2009) ("[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003))); Purcell, 400 F.3d at 1321 (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990) ("[A] prison custodian is not the guarantor of a prisoner's safety.")).

### (c)   *Causation*

"As with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation."

Rodriguez, 508 F.3d at 617.  This requires "evidence of causation between [prison official's] deliberate indifference and [the plaintiff's] injury."  Hale v. Tallapoosa County, 50 F.3d 1579, 1584 (11th Cir. 1995); see also Rodriguez, 508 F.3d at 622.  Specifically, Plaintiff is "required to show two causal links: first, a link between [Defendant's] allegedly deliberately indifferent acts and omissions and the excessive risk of violence; and second, a link between the excessive risk of violence and his injury."  Hale, 50 F.3d at 1584.

### 2.    Application to Plaintiff's Claim.

#### (a)    Substantial Risk of Serious Injury

The undisputed material facts do not demonstrate Plaintiff faced a substantial risk of serious harm.  Prior to Williams and Hobbs attacking Plaintiff, Plaintiff only complained of past events involving Williams and Hobbs and did not alert Defendants to any potential risk of harm he faced while at Camden County Safety Complex.  Doc. 46-3.  The grievance Plaintiff filed sought information on how to prosecute criminal charges against Williams and Hobbs and did not alert Defendants of an ongoing risk to Plaintiff's safety.  Instead, Plaintiff specifically asked to be released from protective custody because he was "not afraid of anybody" and signed a waiver to the same effect.  Doc 46-6 at 47; Doc. 46-4.  Further, following the attack, Defendants investigated the incident and punished Williams and Hobbs for entering Plaintiff's cell.  Doc. 46-1 at 9.  Accordingly, the undisputed material facts do not demonstrate Plaintiff faced a substantial risk of serious harm.

#### (b)    Defendants' Deliberate Indifference to the Risk

Even assuming for the sake of argument Plaintiff faced a substantial risk of serious harm, Plaintiff fails to demonstrate Defendants were both aware of the risk (the subjective component) and they did not respond reasonably to that risk (the objective component).  See Rodriguez, 508

F.3d at 619–20 ("[A] prison official violates the Eighth Amendment if he responds to a known risk 'in an objectively unreasonable manner.'" (quoting Cottone, 326 F.3d at 1358)); Doe, 245 F. App'x at 902 ("Failure to protect from an objectively significant risk that should have been—but was not—perceived, is no infliction of punishment under the Eighth Amendment.").

Plaintiff's only communication to Defendants Mastrolanni and Procter prior to being attacked involved a grievance seeking to take criminal warrants out against Williams and Hobbs for an alleged attack that occurred outside the jail.  Doc. 46-2.  Plaintiff did not have any communication with Defendant Watson prior to being attacked.  Further, Plaintiff himself stated he did not believe he was going to be attacked when he was released to general population in December.  Id. at 6–7.  That is, Defendants could not be aware of a "particularized threat or fear felt by [Plaintiff]" because Plaintiff did not even fear for his safety prior to being attacked. McBride v. Rivers, 170 F. App'x 648, 654 (11th Cir. 2006).  Thus, a reasonable juror could not infer, based on these limited communications about past dangers and Plaintiff's own statements that he did not even believe he was in danger, Defendants "actually knew of a substantial risk— that other inmates—would seriously harm [Plaintiff]."  Caldwell, 748 F.3d at 1102 (citing Farmer, 511 U.S. at 842).  Because Plaintiff has not demonstrated Defendants were subjectively aware of a risk, Plaintiff cannot satisfy the second component.  A failure to respond to an unknown risk cannot form the basis of Plaintiff's § 1983 claim.  Doe, 245 F. App'x at 902 ("Failure to protect from an objectively significant risk that should have been—but was not— perceived, is no infliction of punishment under the Eighth Amendment.").

Plaintiff has failed to demonstrate all essential elements of his failure-to-protect claim against Defendants.  Because Plaintiff has failed to demonstrate a constitutional violation

occurred, there is no need to analyze whether Defendants violated clearly established law.[3]

Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment

in their individual capacities.

## II.   Official Capacity Claims for Monetary Damages

In his Complaint, Plaintiff asserts his failure-to-protect claim against all Defendants in

their individual and official capacities.  Doc. 1.  Defendants argue they are entitled to summary

judgment on Plaintiff's claims against them in their official capacities.  Doc. 46 at 15–17.

States are immune from private suits pursuant to the Eleventh Amendment and traditional

principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983

does not abrogate the well-established immunities of a state from suit without its consent.  Will

v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state agency

or a state officer in their official capacity is "no different from a suit against the [s]tate itself,"

such defendants are immune from suit under § 1983.  Id. at 71.  Furthermore, it is well-settled

law that sheriffs and members of the sheriff department acting in a law enforcement capacity are

acting on behalf of the state.  See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003); Grech

v. Clayton County, 335 F.3d 1326, 1347 (11th Cir. 2003) ("[T]he sheriff acts on behalf of the

State in his function as a law enforcement officer . . . .").  As this Court has recognized:

> Since Manders was decided in 2003, the relevant Georgia law remains
> essentially unchanged.  Indeed, it is now 'insurmountable' that Georgia
> sheriffs act as arms of the state—not as county officials . . . .  In sum,
> Manders and its progeny dictate that where a sheriff and his deputies are
> performing their official and authorized duties as state actors. . . they are
> entitled to Eleventh Amendment immunity from a § 1983 claim for money
> damages or other retrospective relief brought against them in their official
> capacities.

---

[3]   However, the Court notes, in failing to respond to Defendants' Motion, Plaintiff fails to point to any clearly established law.

Frederick v. Brown, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015)

(citing Manders, 338 F.3d at 132; Grech, 335 F.3d at 1332–40; Hall v. Fries, No. 7:13-CV-105,

2014 WL 1389063, at *4–5 (M.D. Ga. Apr. 9, 2014); Scott v. Mercier, No. 5:06-CV-33, 2007

WL 2728440 (S.D. Ga. Sept. 14, 2007); and Lewis v. Wilcox, No. 3:06-cv-29, 2007 WL

3102189, at *8 (M.D. Ga. Oct. 23, 2007)).

Here, the State of Georgia would be the real party in interest in a suit against Defendants

in their official capacities as employees of the Camden County Sherriff's Department.

Accordingly, the Eleventh Amendment immunizes Defendants from suit for monetary damages

in their official capacities.  Absent a waiver of that immunity, Plaintiff cannot sustain any

constitutional claims against Defendants in their official capacities for monetary relief.

Accordingly, the Court should **GRANT** Defendants' Motions for Summary Judgment and

**DISMISS** Plaintiff's Complaint.

## III.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff

has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's

order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is

filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is

not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this

context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687,

691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a

frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim

or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the forgoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 15th day of December, 2020.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA